UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES E. ROJO,

    Plaintiff,

v.

DARREN BRIGHT, et al.,

    Defendants.

Case No. 12-cv-02518-VC (PR)

**ORDER GRANTING MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Dkt. No. 71

## INTRODUCTION

Plaintiff James Rojo, a state prisoner proceeding *pro se*, filed a civil rights complaint asserting claims for deliberate indifference to his serious medical needs against employees at the Correctional Training Facility in Soledad ("CTF"), where Rojo was previously incarcerated. On May 6, 2014, the Court issued an order granting the defendants' motion to dismiss, with leave to amend, an Eighth Amendment claim against Dr. G. Kalisher, and denying the motion to dismiss an Eighth Amendment claim against Dr. Darren Bright for allegedly discontinuing Rojo's prescription for a walker. On July 28, 2014, the Court reviewed Rojo's Second Amended Complaint ("SAC") and dismissed without leave to amend the claim against Dr. Kalisher and dismissed a claim under the Americans with Disabilities Act ("ADA") based on the denial of an extension to Rojo's locker. On October 14, 2014, the Court *sua sponte* reconsidered its previous order and found that, liberally construed, Rojo's SAC alleged a claim for monetary damages under the ADA but found that the claim for injunctive relief was moot because, at the time Rojo filed the SAC, he was housed at a different prison.

Therefore, the remaining claims in this case are the Eighth Amendment claim against Dr. Bright and the ADA claim for monetary damages against CTF Warden Marion Spearman, in his official capacity on behalf of CTF. The defendants have filed a motion to dismiss the ADA claim and for summary judgment on the Eighth Amendment claim. For the reasons stated below,

the motion is granted.

## BACKGROUND

**I. Defendants' Evidence**

### A. Department of Corrections' Regulations Regarding Disability Accommodations

An inmate's assigned primary care physician evaluates whether an ADA accommodation is warranted and documents that need on a "Comprehensive Accommodation Chrono." Bright Dec. ¶ 5, Ex. A. Inmates with disabilities impacting their mobility are classified according to their placement needs. Bright Dec. ¶ 7. Inmates who can walk 100 yards with or without assistive devices, and whose mobility impairment does not impact their placement within California Department of Corrections' institutions, are classified as "DNM." *Id.* Inmates classified as "DPM" cannot walk 100 yards on a level surface without pause, "DPO" inmates are intermittent wheelchair users and "DPW" inmates are full-time wheelchair users. *Id.*

The North Yard at CTF ("CTF-North"), where Rojo was housed, is not appropriate for housing inmates who need walkers because of its uneven terrain and stairs in the path of travel. *Id.* ¶ 8.

### B. Rojo's Medical Treatment at CTF

Dr. Bright reviewed Rojo's medical records, which are attached as exhibits to his declaration. *Id.* ¶ 10. Based on his review, Dr. Bright states the following:

Rojo was at CTF from October 7, 2009 through October 17, 2012. On June 10, 2010, Nurse Oribello evaluated Rojo and found that he could not walk without a walker because he had to stop and rest every 200 feet. *Id.* ¶ 11. Nurse Oribello also noted Rojo had a history of chronic pain and recent spinal surgery. *Id.* He, therefore, transferred Rojo to the Outpatient Housing Unit ("OHU"), a medical unit that is walker and wheelchair accessible and where inmates are housed temporarily after returning from hospital stays. *Id.*

On June 16, 2010, Dr. Kalisher evaluated Rojo, noting that he had done well during the few days he was at the OHU because his pain had improved, he could walk with a cane, and he had been seen in his cell doing push-ups. *Id.* ¶ 12. Dr. Kalisher determined Rojo no longer needed a walker but did need a cane, discontinued the prescription for a walker and changed his

1    disability status to DNM. *Id.* On June 16, 2010, Rojo was released from the OHU back to CTF-
2    North. *Id.*

3    On December 22, 2010, Rojo filed a grievance about the discontinuance of his walker. *Id.*
4    ¶ 13. On January 6, 2011, in response to Rojo's grievance, Dr. Bright evaluated Rojo's mobility.
5    *Id*. Dr. Bright reviewed the relevant portions of Rojo's medical records, examined him physically,
6    and prepared a report. *Id.*, Ex. D at 1-4 (Jan. 6, 2011 consultative report). Dr. Bright's report
7    noted the following: (1) in 2008, Rojo had cervical spine surgery; (2) in 2009, Rojo had lumbar
8    spine surgery; (3) Rojo appeared to be well-developed and well-nourished; (4) Rojo had good
9    strength and reflexes; and (5) Rojo was more than seventy years old, arthritic and slow-moving.
10   *Id.*

11   Dr. Bright determined that Rojo did not medically qualify for a walker or a cane because
12   he did not have a disability that significantly restricted his ambulation, and did not suffer from
13   severe chronic pain, severe lower extremity swelling or acute injury. *Id.* However, in an
14   abundance of caution, and due to Rojo's advanced age and slow movement, Dr. Bright ordered
15   that Rojo continue to have access to a cane for stability and balance. *Id.* Dr. Bright concluded
16   that, in light of the uneven terrain at CTF-North, a cane would be better than a walker for helping
17   Rojo get to the prison's programs and services. *Id.* ¶ 14. Dr. Bright did not personally evaluate
18   Rojo again. *Id.* ¶ 15.

19   On June 21, 2011, Dr. Kalisher renewed Rojo's accommodation chrono (i.e., prescription)
20   for a cane, but not a walker. *Id.* ¶ 16. On July 21, 2011, physician's assistant J. Trent evaluated
21   Rojo and reviewed his medical record. *Id.* ¶ 17. Trent determined that Rojo needed a cane, but
22   not a walker. *Id.* Dr. Kalisher examined Rojo on September 27, October 27, November 30 and
23   December 30, 2011. Kalisher Dec. ¶ 11; Bright Dec., Ex. D at 47, 54, 56, 59. The records of
24   these examinations do not indicate the absence of a walker was causing Rojo harm or interfering
25   with his ability to ambulate. *Id.*

26   On January 6, 2012, Dr. Kalisher requested a new ADA evaluation of Rojo to determine
27   his need for a walker. *Id.* ¶ 18. Dr. Kalisher's January 27, 2012 medical notes indicate that Rojo
28   could choose to change disability status to DPM, which he would have to do to be issued a walker,

3

but that such a change would require him to be transferred to a different prison. *Id.*, Ex. E at 6. The notes state that Rojo declined the change because he wished to remain at CTF-North. *Id.*

On June 21, 2012, Dr. Kalisher evaluated Rojo again and found that he was experiencing worsening knee pain and, as a result, was receiving food in his cell because he could not walk to the dining hall. *Id.* Dr. Kalisher referred Rojo for another evaluation to determine if his disability placement status should be changed from DNM to DPM. *Id.* In August 2012, Trent reevaluated Rojo and determined he should be classified as DPM and transferred to an ADA-compliant facility. *Id.* ¶ 20. He also determined that a walker was medically necessary due to Rojo's worsened chronic lower back and knee pain. *Id.* On August 14, 2012, Trent completed a new prescription for Rojo which permitted him to possess both a cane and a seated walker with brakes. *Id.* ¶ 21. On August 15, 2012, Dr. Bright reviewed and approved the prescription. *Id.* On August 17, 2012, Rojo received the walker and, on October 17, 2012, he was transferred out of CTF. *Id.*

During the time Rojo did not have a walker, from June 2010 through August 2012, he submitted approximately forty-four Health Care Services Request Forms. *Id.* ¶ 22 (citing medical records). Only two of these requests mentioned problems with ambulation, and these were submitted shortly before Dr. Kalisher's June 21, 2012 recommendation that Rojo's ADA status be reevaluated. *Id.* None of the requests sought permission to use a walker. *Id.*

**II. Rojo's Evidence**

Rojo has signed his opposition under penalty of perjury. For purposes of this order, the Court considers the statements in the opposition that are based on Rojo's personal knowledge to be admissible evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding complaint signed under penalty of perjury constituted admissible evidence).

The defendants object to some of Rojo's evidence. The Court need not rule on these objections individually and does not consider inadmissible evidence.

**A. The Locker Extension**

Rojo submitted an ADA request to have his cell locker lowered so that he could have access to the locker's upper shelves. Rojo Dec., ECF Dkt. No. 76 at 4. As the locker was configured, Rojo had to stretch six feet to store his medical supplies, which caused him back pain.

4

*Id.* at 5. "They" could not lower the locker, but "they" extended the lower part, which allowed Rojo to store his supplies without stretching. *Id.* at 4. A year later, a "CDCR crew" removed the extension because "Sacramento determined" it was dangerous. *Id.* at 4, 11. Without the locker extension, Rojo could not store his medical supplies. *Id.* at 4.

On June 15, 2012, Acting Captain A. Padilla interviewed Rojo and said that he would make sure Rojo received a foot locker to store his medical materials. *Id.* at 5. Rojo never received the footlocker, only cardboard boxes, which are a fire hazard. *Id.*

### B. The Walker

Prior to Rojo's arrival at CTF, he was housed at Salinas Valley State Prison where his doctors prescribed a walker for him and he was assured that he would be allowed to use the walker at CTF. Opp., ECF Dkt. No. 76 at 8.

Before Rojo's walker was "taken from him" and he was "made to use his cane to ambulate," he had two different surgeries on his spine and "a rod had been placed into his back." Rojo Dec., ECF Dkt. No. 76 at 4. When Rojo used the cane, the rod would push up and cause him pain and damage his back. *Id.*

Rojo states that Dr. Bright did not physically examine him on January 6, 2011, but merely grabbed his leg. Opp. at 9. He also states he never did push-ups in the OHU and that, contrary to Dr. Bright's testimony, the terrain at CTF-North is not uneven. *Id.* at 7.

## LEGAL STANDARD

### I. Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court may dismiss a complaint (or any part thereof) that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering whether a plaintiff has stated such a claim, the Court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Where a plaintiff is proceeding *pro se*, "particularly in civil rights cases," the court "construe[s] the pleadings liberally" and gives the plaintiff "the benefit of any doubt." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (internal quotation marks omitted).

Still, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Leave to amend is warranted when the deficiencies in the pleadings can be cured with additional allegations that do contradict the allegations in the original complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**II. Motion for Summary Judgment**

Summary judgment is only proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

In considering a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).

## DISCUSSION

**I. Motion to Dismiss ADA Claim**

### A. Legal Standard for Money Damages Claim Under ADA

Title II of the ADA prohibits discrimination by governmental entities on the basis of disability. 42 U.S.C. §§ 12101 *et seq.*; *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

To state a claim under Title II, a plaintiff must allege the following: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). To state a claim for monetary damages under the ADA, the plaintiff must allege facts showing that the defendant acted with deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). Deliberate indifference requires that the defendant (1) had knowledge of the plaintiff's need for accommodation and (2) failed to act upon that knowledge. *Id.* The first requirement is satisfied when the plaintiff alerts the public entity to his need for accommodation. *Id.* The public entity then is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation. *Id.* To meet the deliberate indifference standard, "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

### B. Analysis

Spearman argues that, under Rule 12(b)(6), the ADA claim based on intentional discrimination must be dismissed because the amended complaint fails to identify the person who, with deliberateness, removed Rojo's locker extension.

Although the amended complaint contains sparse allegations about the ADA claim, Rojo provides additional factual allegations in his opposition. Spearman argues that these additional allegations should not be considered because allegations not contained in the complaint may not be used in ruling on a 12(b)(6) motion. In the interests of justice and judicial economy, the Court

7

considers these additional allegations, because even with them, Rojo has failed to allege a cognizable claim for intentional discrimination under the ADA.

Rojo satisfies the first requirement for intentional discrimination by alleging that he put the prison on notice of his need for an accommodation by submitting an ADA request to lower his locker so that he would not have to stretch six feet to store his supplies. However, he does not satisfy the second requirement of alleging that the prison deliberately failed to act. Rojo's allegations, if true, would show that that the prison provided a reasonable accommodation by adding a lower extension to his locker. This accommodation was removed, not because the prison ignored or denied Rojo's need for an accommodation, but because the lower locker extension was determined to be a safety hazard. The prison's replacement of the lower locker extension with cardboard boxes again reasonably accommodated Rojo's need for a low storage container. That Rojo preferred a foot locker does not change the fact that the prison provided a reasonable accommodation. Rojo's conclusory allegation that the cardboard cartons are a fire hazard fails to show the prison deliberately failed to reasonably accommodate his needs.

Thus, when taking Rojo's factual allegations as true, they fail to state a cognizable claim for intentional discrimination under the ADA. Furthermore, amendment would be futile because Rojo could not show, without contradicting his allegations, that the prison deliberately acted with an intent to discriminate against him on the basis of his disability. Therefore, this claim is dismissed with prejudice. *See Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile); *Corinthian Colleges*, 655 F.3d at 995 (leave to amend warranted only when pleading deficiencies can be cured with additional allegations that do not contradict allegations in original complaint).

**II. Motion for Summary Judgment**

Dr. Bright argues that he did not violate Rojo's Eighth Amendment rights because he was not deliberately indifferent to Rojo's serious medical needs. In the alternative, Dr. Bright argues that, even if he did violate Rojo's constitutional rights, he is immune from suit based on qualified immunity. As discussed below, the Court finds that Dr. Bright is entitled to qualified immunity; therefore, it does not address whether Dr. Bright was deliberately indifferent to Rojo's serious

8

medical needs.

### A. Legal Standard for Claim of Deliberate Indifference to Serious Medical Needs

To establish an Eighth Amendment violation based on deliberate indifference to serious medical needs, a prisoner must allege both (1) a serious medical need and (2) deliberate indifference to that need by prison officials. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992). A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Instead, deliberate indifference involves a purposeful act or failure to act. *McGuckin*, 974 F.2d at 1060. Deliberate indifference may be shown when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which they provide medical care. *Id.* at 1062. A difference of medical opinion or a difference of opinion between the plaintiff and his doctor does not constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### B. Legal Standard for Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has shown the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to any reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The court may exercise its discretion in deciding which prong to address first. *Id.* Under either prong, courts must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment. *Estate of Ford v. Caden*, 301 F.3d 1043, 1053 (9th Cir. 2002). For a qualified immunity analysis, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful. *Id.* at 939.

**C. Analysis**

It is undisputed that Dr. Bright met with Rojo only once, on January 6, 2011, in response to Rojo's grievance about Dr. Kalisher denying him a walker. Dr. Bright submits his four-page consultative report dated January 6, 2011. *See* Bright Dec., Ex. D at 1-4. The report indicates that Dr. Bright undertook an in-depth review of Rojo's extensive medical history, listened to and recorded Rojo's complaints of pain caused by the rods in his back, conducted a physical examination, reviewed diagnostic data including X-rays, MRIs and CT scans, assessed Rojo's medical condition and, based on this diagnostic evidence, developed a medical plan. *Id.* In regard to Dr. Bright's physical examination, the report indicates Dr. Bright found the following:

> SKIN: The patient has significant fungal infection on his feet involving onychomycosis in all his toes. . . .
>
> MUSCULOSKELETAL: The patient is well-developed, well-nourished male, no obvious atrophies noted. Bilateral gastrocnemius measures 4.0 cm. Strength is 5/5 and equal bilaterally at hip flexion, knee flexion and extension and ankle plantar and dorsiflexion. The patient has got toe strength with dorsi and plantar flexion of the toes 5/5 and equal bilaterally and intact.
>
> NEUROLOGICAL: The patient has decreased sensation globally in his right arm. He also has decreased sensation in bilateral feet. Some slightly decreased sensation in his right lower extremity. It appears to be global and not upon any specific nerve root. The patient has negative straight leg raises bilaterally. Deep tendon reflex is 1+ and equal bilaterally at the elbows. At 1+ and equal bilaterally at the patellar and Achilles tendons.

*Id.* at 2.

Dr. Bright's consultative report, including the results of his examination of Rojo's musculoskeletal and neurological systems, provides strong evidence that he physically examined

10

Rojo, contrary to Rojo's assertion. However, even if Dr. Bright did not conduct a thorough physical examination of Rojo, the undisputed evidence shows that Dr. Bright listened carefully to Rojo's complaints of pain and difficulty ambulating and, only after reviewing Rojo's extensive medical record and conducting some sort of physical examination, determined that Rojo did not medically qualify for a walker. The undisputed evidence shows that, between January 6, 2011 and August 2012, other medical professionals monitored Rojo's mobility limitations and none determined that a walker was medically necessary. When Rojo's ability to ambulate worsened, Dr. Bright approved Trent's August 2012 determination that Rojo's medical condition warranted the use of a walker.

Under these circumstances, Dr. Bright could reasonably believe that his January 6, 2011 determination that Rojo did not medically need a walker was lawful. Specifically, it would not have been clear to a reasonable doctor in Dr. Bright's position that, after considering Rojo's complaints about walking, reviewing Rojo's medical records, and conducting some kind of physical examination of Rojo, that it was unlawful to deny Rojo a walker. Other undisputed evidence supports this conclusion. After Dr. Bright's determination, other medical professionals saw Rojo from January 2011 through mid-2012 and did not indicate he had difficulty walking. Also, Rojo only mentioned trouble walking in two of his forty-four requests for medical treatment and these were submitted close to the time Dr. Kalisher had Rojo's ambulatory status re-evaluated.

Rojo attempts to raise a dispute of material fact by stating that, contrary to Dr. Bright's contention, the CTF-North yard does not have uneven terrain. However, this dispute is not material to the determination of whether Dr. Bright reasonably believed his denial of a walker was constitutional. Although Dr. Bright cited the uneven terrain as a reason a cane, rather than a walker, would be better for Rojo, his denial of the walker was based on Rojo's medical history and physical ability, not on the CTF-North terrain. Likewise, Rojo fails to create a genuine dispute of material fact by stating that he never did pushups in the OHU because that was not the basis for Dr. Bright's decision.

In sum, on this record, even viewing the evidence in a light most favorable to Rojo, it cannot be said that any reasonable prison doctor would know that he was constitutionally required

to prescribe a walker in January 2011.  Therefore, Dr. Bright is entitled to qualified immunity on the deliberate indifference claim and summary judgment is granted on this basis.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court grants the motion to dismiss with prejudice the ADA claim and grants the motion for summary judgment on the deliberate indifference claim based on qualified immunity. Dkt. No. 71

2. The Clerk shall terminate all pending motions, enter a separate judgment and close the case.

IT IS SO ORDERED.

Dated: July 29, 2015

_____
VINCE CHHABRIA
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. ROJO,<br><br>        Plaintiff,<br><br>    v.<br><br>DARREN BRIGHT, et al.,<br><br>        Defendants. | Case No.  12-cv-02518-VC<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 29, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James E. Rojo ID: J-53355
D20-134
480 Alta Road
San Diego, CA 92179

Dated: July 29, 2015

                                        Richard W. Wieking
                                        Clerk, United States District Court

                                        By:_____
                                        Kristen Melen, Deputy Clerk to the
                                        Honorable VINCE CHHABRIA